UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES of AMERICA *ex rel.* LINDA NICHOLSON, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | No. 10 C 3361 |
| LILIAN SPIGELMAN M.D., HEPHZIBAH CHILDREN'S ASSOCIATION, and SEARS PHARMACY, | ) ) ) ) ) ) | Judge Feinerman |
| Defendants. | | |

**MEMORANDUM IN SUPPORT OF THE**
**UNITED STATES'MOTION TO DISMISS RELATOR'S COMPLAINT**

**Introduction**

The complaint in this action, brought under the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA"), alleges damages of $320 to the United States. The briefs submitted in support of and opposition to the defendants' joint motions to dismiss pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) make clear that the policies, practices, and documents of federal and state agencies will be implicated in this litigation and that the federal and state governments will bear the burden of substantial discovery in this case. Accordingly, the United States has determined that, on balance, the prosecution of this case is not in the interest of the United States and thus seeks to exercise its prosecutorial discretion to dismiss this action under 31 U.S.C. § 3730(c)(2)(A).

**Background**

This *qui tam* case concerns five individual prescriptions of the drug Celexa, an antidepressant, written for a minor who is a Medicaid patient. Relator Linda Nicholson names as defendants the physician who prescribed the Celexa, the pharmacy that filled the prescription, and the institution where the child, in foster care, was institutionalized. Nicholson alleges that defendants submitted or caused to be submitted claims for reimbursement of these drugs to Medicaid. Nicholson brings this suit on behalf of the United States, alleging that these prescriptions were not eligible for reimbursement by the federal government, because Celexa had not been approved by the Food and Drug Administration for pediatric use. The complaint alleges that the five claims at issue were reimbursed for a total of $320.

The United States elected not to intervene in this case on July 27, 2010. *See* United States' Notice of Election to Decline Intervention, Docket No. 5. On November 30, 2010, defendants filed joint motions to dismiss pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6). Docket Nos. 36 and 38. It is clear from the briefs filed by both the defendants and the relator that government payment decisions, by both the Centers for Medicare and Medicaid Services ("CMS") and Illinois Medicaid program, are central determinations for this litigation.

After reviewing the proceedings to date, the United States has determined that further prosecution of this action is not in the public interest. The United States accordingly seeks to dismiss the complaint under § 3730(c)(2)(A), which provides that the "Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with

2

an opportunity for a hearing on the motion." 31 U.S.C. § 3730(c)(2)(A). The United States holds this authority to dismiss even where it has opted not to intervene.

The United States does not exercise its authority to dismiss an action unless it believes that it is in the interests of the United States and the public. In this case, should the matter proceed, the United States anticipates that it will impose substantial burdens on both the United States and the State of Illinois in the form of monitoring and participation in the proceedings as well as complying with anticipated discovery obligations. The maximum loss to Medicaid in this matter appears to be no more than $320. In balancing these interests, the United States has determined that further prosecution of the claims in this action is not in the interest of the United States, and respectfully requests that the complaint be dismissed.

## Discussion

### A. The United States Is the Real Party in Interest under the FCA.

The FCA is the United States' primary tool used to redress fraud on the United States. In the FCA, Congress provided a mechanism by which a private party, known as a "relator," can file suit on behalf of the United States to recover for damage suffered solely by the United States from fraud or false claims submitted to it. *See* 31 U.S.C. § 3730. Under this unique statutory scheme, if the *qui tam* suit is successful, the United States Treasury recovers the judgment and pays a percentage of its recovery to the relator. Even if the United States decides not to intervene and the relator proceeds with the conduct of the litigation on his own, the United States is still the real party in interest and receives at least 70 percent of any proceeds of the litigation.

Under the statute, the relator initially files her complaint under seal and serves it and a statement of material evidence and information on the United States. 31 U.S.C. §§ 3730(b)(1) and

(2). The United States has 60 days (and any extensions granted by the district court) to investigate the allegations and elect whether or not to intervene in the litigation. 31 U.S.C. §§ 3730(b)(2) and (3). If the United States intervenes in the case, the United States assumes "the primary responsibility for prosecuting the action," and is not bound by an act of the relator. 31 U.S.C. § 3730(c)(1). The relator remains a party to the suit, but the United States may settle the case over her objection or may seek to limit her participation in the litigation. 31 U.S.C. § 3730(c)(2)(B) and (c)(2)(C).

If the United States declines to intervene in the case, the relator may stand in the shoes of the government and proceed with the action. 31 U.S.C. § 3730(c)(3). However, that right is circumscribed by a number of limitations designed to ensure that the United States retains control over the declined action. The relator cannot dismiss the action without the written consent of the Attorney General. 31 U.S.C. § 3730(b)(1). The court may stay discovery in the *qui tam* action if it would interfere with the United States' investigation or prosecution of another matter. 31 U.S.C. § 3730(c)(4). And even when the Attorney General initially declines to intervene in the suit, the district court "may nevertheless permit the Government to intervene at a later date upon a showing of good cause." 31 U.S.C. § 3730(c)(3). Most relevant here, the United States retains the right to settle or dismiss a *qui tam* action over a relator's objections, even when the United States has declined to intervene in the action. 31 U.S.C. § 3730(c)(2)(A)-(B).

### B. The United States' Prosecutorial Discretion to Dismiss *Qui Tam* Actions under § 3730(c)(2)(A) Is Entitled to Substantial Deference.

As the courts have recognized, § 3730(c)(2)(A) confers broad discretion on the United States to dismiss claims that are not in the interest of the United States. *See Swift v. United States*, 318 F. 3d 250 (D.C. Cir. 2003); *United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139 (9th Cir. 1998). The Seventh Circuit has not yet addressed the standard the United States

4

must meet to dismiss a *qui tam* action under § 3730(c)(2)(A) of the FCA. Three other appellate courts, however, have specifically considered this issue. In *Swift v. United States*, the D.C. Circuit held that the United States has an "unfettered right to dismiss" a *qui tam* action under § 3730(c)(2)(A). 318 F.3d at 252. The Ninth Circuit held that the United States can dismiss an action under § 3730(c)(2)(A) so long as it articulates a rational reason for dismissal related to a valid government purpose. *Sequoia Orange*, 151 F.3d 1139. The Tenth Circuit adopted the rational relationship test in granting a motion to dismiss by the United States under § 3730(c)(2)(A). *Ridenour v. Kaiser-Hill Co., LLC*, 397 F.3d 925 (10th Cir. 2005). All these cases make clear that the United States' determination that a case is not in the United States' interest is entitled to substantial deference. The reason for that deference is that in all *qui tam* actions under the FCA, the United States is always the real party in interest.

In *Swift*, the D.C. Circuit concluded that under § 3730(c)(2)(A), the United States has an "unfettered right to dismiss an action." 318 F. 3d at 252, 253 ("The decision whether to bring an action on behalf of the United States is therefore 'a decision generally committed to [the government's] absolute discretion' for the reasons spelled out in *Heckler v. Chaney*, 470 U.S. at 831"). *Swift* involved a *qui tam* action against current and former employees of the Department of Justice, alleging that these individuals submitted false time sheets to the Department. The United States moved to dismiss pursuant to § 3730(c)(2)(A), on the ground that the expected recovery to the United States did not justify the expected burden on the United States if litigation continued. The district court dismissed the claim and the D.C. Circuit affirmed.

The D.C. Circuit concluded that the general principle of separation of powers applied such that "decisions not to prosecute, which is what the government's judgment in this case amounts to,

5

are unreviewable." *Id.* The D.C. Circuit rejected the relator's argument that the reference to a hearing in § 3730(c)(2)(A) confers authority on the trial court to review the United States' decision to dismiss or requires the United States to articulate a reason for its dismissal. The appellate court concluded that the function of a hearing if requested by a relator "is simply to give the relator a formal opportunity to convince the government not to end the case." *Id.* at 253.

In so holding, the D.C. Circuit did not follow the "rational relationship test" adopted by the Ninth Circuit in *Sequoia Orange*. 318 F.3d at 252. In *Sequoia Orange,* a case decided prior to *Swift*, the Ninth Circuit held that dismissal under § 3730(c)(2)(A) was warranted if the United States could articulate a rational reason for dismissal. Specifically, the Ninth Circuit described its test as follows: "A two step analysis applies [ ] to test the justification for dismissal: (1) identification of a valid government purpose; and (2) a rational relation between dismissal and accomplishment of the purpose. If the United States satisfies the two-step test, the burden switches to the relator to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal." 151 F.3d 1145 (internal quotations omitted). The D.C. Circuit concluded that the standard adopted by the Ninth Circuit amounted to an improper intrusion on the Executive Branch's prosecutorial discretion, especially where the United States, as the real party in interest, is entitled to voluntarily dismiss this action without leave from the court under Fed. R. Civ. P. 41(a)(1)(A).[1]

Regardless of whether the *Swift* or *Sequoia Orange* tests are applied, it is clear that both tests are highly deferential to the United States' determination about what actions should be pursued on its behalf. *See Sequoia Orange,* 151 F.3d at 1145 ("The 1986 version of the False Claims Act

---

[1] Fed. R. Civ. P. 41(a)(1)(A) states that "the plaintiff may dismiss an action without a court order by filing a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment[.]" Fed. R. Civ. P. 41(a)(1)(A)(i).

6

continues the evolution of greater executive control over qui tam lawsuits . . . . Although the amendments give the relator the right to remain a party after government intervention, the government's power to dismiss or settle an action is broad.") (citations omitted); *see also United States v. Fiske*, 968 F. Supp.1347 (E.D. Ark. 1997) (noting that decision to dismiss under *Sequoia Orange* test rests largely with the United States). This deference comports with both the FCA's statutory language and the well-established deference due the Executive Branch's exercise of prosecutorial discretion.

The plain language of § 3730(c)(2)(A) also suggests that the court afford significant deference to the United States because, unlike other provisions of the FCA, no standard of review is delineated. For example, the section addressing the Attorney General's right to settle a *qui tam* case over a relator's objection permits the United States to settle the action "notwithstanding the objections of the person initiating the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances." 31 U.S.C. § 3730(c)(2)(B). This settlement provision thus anticipates that a court will evaluate the decision of the Attorney General under a particular test: the court must evaluate the settlement and determine that it is "fair, adequate and reasonable." Likewise, the FCA specifically states that the relator has no power to dismiss unless "the court and the Attorney General give written consent to the dismissal and their reasons for consenting." 31 U.S.C. § 3730(b)(1). Unlike these other provisions, the terms of the FCA addressing dismissal by the United States contain no standard of review and reveal no limitation on the Attorney General's power to dismiss a *qui tam* case that he deems contrary to the interests of the United States. The absence of such restrictions on the Attorney General's dismissal authority suggests a higher level of deference to prosecutorial discretion.

It is not surprising that Congress gave the Attorney General broad discretion to determine whether to dismiss a *qui tam* action. A *qui tam* relator has been authorized by Congress to sue solely to seek recovery of injuries suffered by the United States, *not* by the relator. As the Supreme Court made clear in *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 772-74 (2000), a relator has Article III standing because she can be regarded as having received a partial assignment from Congress of the United States' damages claim; a relator herself has suffered no cognizable injury warranting the continuation of a suit opposed by the United States. A private party can bring an action for damages suffered in their own name; however, it is the Attorney General's prerogative to determine whether an action brought in the name of the United States for damages suffered by the United States is in the United States' interest.

As *Swift* emphasized, the FCA operates against the backdrop of the general principle of separation of powers that the Executive Branch exercises control over whether to pursue litigation for the United States. *See Heckler v. Chaney*, 470 U.S. 821, 832 (1985); *Buckley v. Valeo*, 424 U.S. 1, 138 (1976). Significantly, under the Constitution, the Executive Branch's decision not to prosecute a case is unreviewable. *See, e.g., United States v. Cox*, 342 F.2d 167 (5th Cir.) (*en banc*), *cert. denied*, 381 U.S. 935 (1965); *see also Newman v. United States*, 382 F.2d 479 (D.C. Cir. 1967). Accordingly, where as here, the United States has made a considered decision that further prosecution of the allegations in question is not warranted, its motion to dismiss under § 3730(c)(2)(A) should be granted.

    **C.**    **Dismissal Is Warranted in this Case.**

After reviewing the briefs filed in this case, the United States has determined that the prosecution of this *qui tam* action is not in the interests of the United States. Given that the briefs

focus predominantly on payment and coverage determinations by CMS and Illinois Medicaid, it is clear that this case will require substantial government participation if it continues. The United States should be given broad discretion to determine which FCA cases proceed, in particular where the prosecution of a case will involve substantial federal resources and minimal potential recovery.

Here, not only will the United States clearly be a focal point of discovery regarding payment decisions by CMS and Illinois Medicaid, but the burdens imposed by discovery are expected to be substantial. The United States will be required to monitor the case and file briefs to clarify its position on various questions of law. The United States expects to be subject to substantial third-party production obligations, as will the State of Illinois, which will entail collecting documents, reviewing them for relevance and privilege, and even possibly preparing government officials for deposition, subject to applicable *Touhy* regulations. *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468-70 (1951)

The United States has already settled allegations regarding off-label marketing of Celexa for pediatric patients and off-label promotion of other drugs with Forest Laboratories, the drug's manufacturer. *See U.S. ex rel Gobble v. Forest Laboratories*, No. 03-cv-10395-NMG (D. Mass.). In that settlement the United States recovered over $300 million in FCA recoveries and criminal fines. In contrast, this case involves a total of five prescriptions of the drug, and names as defendants an individual doctor, an individual pharmacy and an individual institution.

Given that the maximum loss in this case is $320, it is simply not in the United States' interest to permit this case to proceed. The primary goal of the False Claims Act is to recover

money to the public fisc. That purpose will not be served by this litigation, which will likely cost the United States more in expenses than it can possibly recover.[2]

Federal agencies have limited resources to investigate fraud, and this case will divert resources from other investigations without furthering the primary purpose of the FCA. The United States has undertaken a cost-benefit analysis and concluded that it is not in the public interest to spend taxpayer dollars responding to discovery on claims worth a very limited sum of money. To the extent the relator has a private right of action against any defendant, the United States takes no position on such rights. Accordingly, the court should dismiss this action under § 3730(c)(2)(A).

---

[2] Unlike the United States, relators' counsel are entitled to recover attorney's fees in successful *qui tam* actions, regardless of the amount of the recovery. 31 U.S.C. § 3730(d).

**Conclusion**

For the foregoing reasons, the United States respectfully submits that this case should be dismissed pursuant to 31 U.S.C. § 3730(c)(2)(A).

    Respectfully submitted,

    TONY WEST
    Assistant Attorney General

    PATRICK J. FITZGERALD
    United States Attorney

    By:  s/ Eric S. Pruitt
        ERIC S. PRUITT
        Assistant United States Attorney
        219 South Dearborn Street
        Chicago, Illinois 60604
        (312) 353-5496
        eric.pruitt@usdoj.gov

    JOYCE R. BRANDA
    RENÉE BROOKER
    DOUGLAS J. ROSENTHAL
    United States Department of Justice
    Commercial Litigation Branch
    P.O. Box 261, Ben Franklin Station
    Washington, D.C. 20044
    (202) 305-2073