UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. LINDA NICHOLSON, | ) ) ) | |
| Plaintiff, | ) ) | 10 C 3361 |
| vs. | ) ) | Judge Feinerman |
| LILIAN SPIGELMAN M.D., HEPHZIBAH CHILDREN'S ASSOCIATION, and SEARS PHARMACY, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Relator Linda Nicholson brought this qui tam action on behalf of the United States, alleging that Defendants Lilian Spigelman, Hephzibah Children's Association, and Sears Pharmacy violated the False Claims Act, 31 U.S.C. § 3729 *et seq*. ("FCA"). Nicholson alleges that Defendants unlawfully submitted for Medicaid reimbursement at least five prescriptions intended for "off-label" use, meaning a use not approved by the United States Food and Drug Administration and thus not eligible for reimbursement. After the United States declined to intervene, the complaint was unsealed and served on Defendants, who moved to dismiss under Fed. R. Civ. P. 9(b), 12(b)(1), and 12(b)(6). Docs. 36, 38, 40. The United States then filed a motion to dismiss pursuant to 31 U.S.C. § 3730(c)(2)(A). Doc. 46. The court held a hearing and received oral argument on the government's motion. Having considered the parties' briefs and the presentations made at oral argument, the court grants the government's motion, denies Defendants' motions as moot, and dismisses this case.

The False Claims Act prohibits the submission of false and fraudulent claims to the government, and authorizes private citizens to enforce its provisions. 31 U.S.C. § 3729(a), (b)(1); *see Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 912 (7th Cir. 2009). To pursue such an action, a relator must file her complaint under seal for at least sixty days, which gives the government an opportunity to investigate the claim and to determine whether to intervene. 31 U.S.C. § 3730(b)(2). Even where it declines to intervene, the government retains significant control over a qui tam action. *See Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 753-54 (5th Cir. 2001) (en banc).

As noted above, the United States has moved to dismiss this suit pursuant to 31 U.S.C. § 3730(c)(2)(A), which states, "The government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." The courts of appeals are split on how § 3730(c)(2)(A) motions should be handled. The D.C. Circuit held that § 3730(c)(2)(A) "give[s] the government an unfettered right to dismiss an action," rendering the government's decision to dismiss essentially "unreviewable." *Swift v. United States*, 318 F.3d 250, 252 (D.C. Cir. 2003); *see also Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 65 (D.C. Cir. 2008). Dicta from the Fifth Circuit is in accord. *See Riley*, 252 F.3d at 753 ("the government retains the unilateral power to dismiss an action notwithstanding the objections of the [relator]") (internal quotation marks omitted). The Ninth Circuit, by contrast, applies a "two-step analysis … to test the [government's] justification for dismissal: (1) identification of a valid government purpose; and (2) a rational relation between dismissal and accomplishment of the purpose. If the United States satisfies the two-step test, the burden switches to the relator to demonstrate that the dismissal is fraudulent, arbitrary and

capricious, or illegal." *United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1145 (9th Cir. 1998). The Tenth Circuit is in accord. *See Ridenour v. Kaiser-Hill Co., L.L.C.*, 397 F.3d 925, 936 (10th Cir. 2005). The Second Circuit has expressed agreement the Ninth Circuit, albeit in a decision that the Supreme Court reversed on other grounds. *See United States ex rel. Stevens v. State of Vt. Agency of Natural Resources*, 162 F.3d 195, 201 (2d Cir. 1998) (citing *Sequoia Orange* with approval), *rev'd on other grounds*, 529 U.S. 756 (2000). The Seventh Circuit has not entered the fray, and it is unnecessary to do so here, for even under the Ninth Circuit's standard, the government is entitled to dismissal of Nicholson's suit.

The government submits that allowing this case to proceed would be detrimental to its interests. According to the government, Nicholson alleges actual damages to the United States of $320, and even if statutory penalties and treble damages are added to that amount, the burdens on the government of monitoring the case, filing briefs to clarify its position on questions of law, responding to discovery requests, and preparing government officials for depositions would "cost the United States more in expenses than it can possibly recover." Doc. 47 at 10. The government further contends that because the case "focus[es] predominantly on payment and coverage determinations by [the Centers for Medicare and Medicaid Services] and Illinois Medicaid, it is clear that this case will require substantial government participation if it continues," and that such participation would divert the government's limited resources from more substantial and important investigations. *Id*. at 9-10. The government claims to have reached this conclusion after an investigation of the suit and a cost-benefit analysis. *Id*. at 10.

Nicholson argues that the cost to the government of allowing this suit to proceed would be relatively small, and even offers to not seek discovery against the government without leave

of court.  But the fact remains that "the government's goal of minimizing its expenses is still a legitimate objective, and dismissal of the suit further[s] that objective." *Swift*, 318 F.3d at 254 (applying the Ninth Circuit's *Sequoia Orange* standard in rejecting a comparable argument); *see also United States ex rel. Roberts v. Lutheran Hosp.*, 1998 WL 1753335, at *3 (N.D. Ind. Apr. 17, 1998) ("Because the government has limited resources to devote to FCA investigations … the government must weigh the size of the potential recovery against the relative cost required to meet its obligations" in the suit).  Nicholson's argument, moreover, ignores both the likelihood that *Defendants* would seek discovery from the government and the government's burden in monitoring the case and filing briefs on issues of law likely to arise in the suit.  Nicholson also ignores the fact that Nicholson *herself* wants to depose four Medicaid and Medicare officials in connection with her opposition to the government's motion to dismiss.  The costs identified by the government easily "satisf[y] the *Sequoia* test by advancing a plausible, or arguable reason for the dismissal." *Ridenour*, 397 F.3d at 937 (internal quotation marks omitted); *see also United States ex rel. Fay v. Northrop Grumman Corp.*, 2008 WL 877180, at *7 (D. Colo. Mar. 27, 2008) ("even when the legitimate interest articulated by the Government is only incidentally advanced, the rational relationship test has been satisfied").

Because the government has presented reasons for dismissal that are rationally related to a legitimate government purpose, the "burden switches to the relator to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal." *Sequoia*, 151 F.3d at 1145 (quotation marks omitted).  Nicholson does not and could not seriously contend that the government's decision to dismiss this case was "fraudulent" or "illegal."  Rather, Nicholson focuses her efforts on showing that dismissal is arbitrary and capricious, arguing that the government has seriously underestimated the financial upside of the litigation—she asserts that

Defendants submitted "thousands of false claims," and maintains that the government's view that only five false claims were made demonstrates that it has not conducted a full investigation. At oral argument, the court asked the government's attorney whether the government's position on dismissal would change if Nicholson were correct that this case involved one thousand rather than five false claims. The attorney said that the government's decision would not change, again referencing its desire to direct its resources to other matters.

The government's cost-benefit calculation may be sound or it may be short-sighted, but it cannot be deemed arbitrary and capricious. This is especially so given two circumstances particular to this case. First, the United States previously pursued an FCA off-label marketing action against Forest Laboratories, the manufacturer of Celexa, the drug at issue here, and recovered over $300 million. Doc. 47 at 9; *United States ex rel. Gobble v. Forest Labs.*, No. 03-cv-10395-NMG (D. Mass.). The efficiencies to the government of pursuing the manufacturer—the party that allegedly marketed and promoted the drug's off-label uses—rather than the hundreds, if not thousands, of individual doctors, hospitals, and pharmacies that allegedly wrote and filled off-label prescriptions, cannot be overlooked. Second, the three defendants in this case—a retired psychologist uninsured against fraud, a non-profit shelter for adolescent children, and a family-owned pharmacy—likely lack the resources to satisfy any reasonably substantial judgment. Thus, even if Nicholson has correctly assessed the magnitude and legal merit of this case, the government's actual recovery is likely to be quite small.

For these reasons, the government is entitled to dismissal under the *Sequoia Orange* standard. Indeed, Nicholson has not identified a single case, and the court could find none, denying the government's motion to dismiss under § 3730(c)(2)(A) in circumstances remotely comparable to those presented here, or even in *any* circumstance.

Turning from substance to procedure, Nicholson maintains that she has a right to an evidentiary hearing and discovery, including depositions of four Medicaid and Medicare officials, if there is any doubt that the government has undertaken an "effort to allow doctors and pharmacies to continue to perpetrate … massive fraud." Doc. 50 at 8; *see also id*. at 5 ("What apparently underlies [the government's decision] is that the government has decided to allow massive Medicaid fraud to continue."). This patently is wrong. Congress did not intend "that evidentiary hearings be granted as a matter of right." S. Rep. No. 99-345, at 26 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5291. To the contrary,

> an automatic right could provoke unnecessary litigation delays. Rather, evidentiary hearings should be granted when the *qui tam* relator shows a 'substantial and particularized need' for a hearing. Such a showing could be made if the relator presents a colorable claim that the settlement or dismissal is unreasonable in light of existing evidence, that the Government has not fully investigated the allegations, or that the Government's decision was based on arbitrary and improper considerations.

*Ibid*.; *see also Kelly v. Boeing Co.*, 9 F.3d 743, 753 n.11 (9th Cir. 1993).

For the reasons stated above, Nicholson has not made the showing necessary to warrant an evidentiary hearing. Moreover, to permit Nicholson to conduct discovery of the government or to depose Medicaid and Medicare officials would "allow[] what the Government was trying to avoid in moving to dismiss the action"—costly and time-consuming depositions and discovery with little prospect of significant recovery. *Ridenour*, 397 F.3d at 938 (district court did not err "in denying inquiry into the Government's subjective motivation behind its dismissal" or in preventing discovery that would have undermined "one of the very purposes behind the Government's motion to dismiss"). And at the risk of gilding the lily, it bears mention that the officials Nicholson seeks to depose have no apparent connection to her suit, other than that they corresponded with the Utah Attorney General's Office and took a position on prescribing drugs

for off-label purposes that Nicholson considers supportive of her allegations of "massive fraud." Doc. 50 at 6-8. Nicholson's opportunity to respond to the government's motion to dismiss in writing and at a hearing provided all the process she was due under the FCA. *See Green v. Internal Revenue Serv.*, 2008 WL 5378120, at *2 (N.D.N.Y. Dec. 23, 2008); *United States ex rel. Pentagen Techs. Int'l Ltd. v. United States*, 2001 WL 770940, at *7 n.13 (S.D.N.Y. July 10, 2011) ("[A]lthough not required by the [FCA], this Court permitted Relators to formally Oppose the Government's Motion to Dismiss. This Court's consideration of the arguments raised in the Relators' Opposition has provided the Relators with an opportunity to be heard on the Government's Motion").

For these reasons, the government's motion to dismiss is granted. Nicholson's motions for leave to file various studies regarding off-label marketing are granted, though the court notes that the studies have very little, if any, relevance to this case and no bearing on the strength of the government's motion to dismiss. Defendants' motions to dismiss are denied as moot. This case is dismissed with prejudice.

July 8, 2011

United States District Judge